CROMPTON CARPET COMPANY *vs.* CITY OF WORCESTER.

Worcester.    Oct. 6, 1876. — Jan. 5, 1878.    COLT, MORTON & SOULE,
JJ., absent.

The St. of 1856, *c.* 189, authorizing the city of Worcester, for the purpose of sup-
plying the city with pure water, to take and convey into the city the waters of one
of several streams or of a certain pond, at the election of the city council, and all
water-rights connected therewith, and to take and hold land for such purpose, but
not prescribing any mode by which the city should manifest its purpose to take
any estate against the owner's right, nor providing for any notice, public or other-
wise, to the owner of such purpose, and providing that the act should be "void
unless submitted to, and approved by, the voters of the city," was not accepted by
the city until December 12, 1871.    The St. of 1861, *c.* 118, authorizing the city to
take and convey into the city the waters of East or Lynde Brook, "in the manner
and subject to the liabilities and restrictions set forth in " the St. of 1856, *c.* 189,
was approved on March 30, 1861, and took effect on its passage.    On February 8,
1864, the city council voted to take the waters of East or Lynde Brook, and pro-
ceeded to introduce them into the city.    The St. of 1864, *c.* 104, also authorizing
the city to take and convey into the city the waters of East or Lynde Brook, was
passed on March 18, 1864, and took effect on its passage.    The St. of 1871, *c.* 361,
passed May 26, 1871, provided that the city "shall, within sixty days from the
time its city council shall vote to take any lands or ponds or streams of water, by
authority of this or any former act, file in the office of the registry of deeds," "a
description of the lands, ponds or streams of water so taken, as certain as is
required in a common conveyance of lands, and a statement of the purpose for
which the same are taken, which description and statement shall be signed by the
mayor of said city, and the property so taken shall vest in said city from the time
of the filing of said description and statement ; " that a landowner injured by such
taking might apply by petition to the Superior Court within a certain time "from
the taking of the said land, water or water-rights as aforesaid," for the assessment
of his damages; and that "nothing in this act shall be construed to authorize
said city to take " what it " is not now authorized by law to take."    On Decem-
ber 22, 1871, the city council voted to take the waters of East or Lynde Brook,
and directed the mayor to duly file the description and statement required, which
the mayor did on December 27, 1871.    A corporation which acquired title in 1870
to property, alleged to have been injured by the introduction of water in 1864, and
for which no compensation had been made, duly filed its petition for damages un-
der the St. of 1871, *c.* 361.    *Held,* that the petition could be maintained.

PETITION to the Superior Court, filed May 23, 1874, under
the St. of 1871, *c.* 361, § 3, for the appointment of commissioners
to assess the damages sustained by the petitioner by the taking,
by the city council of the city of Worcester, of East or Lynde
Brook, in the town of Leicester, to supply the city with pure
water.

After the former decision, reported 119 Mass. 375, commissioners, appointed by the court, heard the parties, and made an award, filed February 24, 1876, in which they determined the amount which should be paid as damages to the petitioner. In the Superior Court, on March 27, 1876, the respondent claimed in writing a trial by jury, and the case was tried, before *Rockwell*, J., who allowed a bill of exceptions in substance as follows:

It appeared that the petitioner was the owner in fee simple of a tract of land in the southerly part of Worcester, lying on both sides of a natural stream of water called Kettle Brook, on which it had water-mills, a dam and a pond, for supplying power for the mills ; that it acquired title to the land by deed on July 16, 1870 ; and that East or Lynde Brook was a natural stream of water flowing into Kettle Brook above the petitioner's premises.

It also appeared that the St. of 1854, *c.* 338, was accepted by the city of Worcester on May 27, 1854, and the St. of 1856, *c.* 189, on December 12, 1871. The St. of 1861, *c.* 118, was in evidence. The petitioner put in evidence the Sts. of 1864, *c.* 104, and of 1871, *c.* 361, and the following order of the city council, passed December 22, 1871 :

" Whereas the city of Worcester, in the exercise of powers conferred by the laws of the Commonwealth, for the purpose of supplying said city with pure water, has heretofore erected a dam across the valley of East or Lynde Brook, in the town of Leicester, and thereby formed a reservoir of water, and has constructed an aqueduct for conveying the water of said Lynde Brook to said city, and has acquired and taken all the land occupied by said dam, and all the land flowed by the waters of said reservoir, and the right to flow said land by said waters, and all the waters of said East or Lynde Brook, and of all branches and tributaries thereof, and all waters flowing into said brook, branches and tributaries, it is now in the exercise of the powers aforesaid.

" Ordered, that all the aforesaid acts and doings of said city be, and the same are hereby established and confirmed, and that said city hereby takes and appropriates, for the said purposes, the right to raise said dam five feet above its present height, and the right, by means of said dam, to flow back the waters of said East or Lynde Brook upon the lands above said dam, and all the

lands which would thereby be flowed; also a strip of land ten rods in width around the entire margin of the reservoir thereby erected for the preservation and purity of the same. Also a certain tract of land situated in said Leicester. [Here followed a description of the land covered by the reservoir.]

" And it is further voted, that all the lands, brooks, streams, water-courses, water-rights and rights of flowage hereinbefore mentioned, be and the same are hereby taken by said city, and forever appropriated, established and confirmed for the purpose of supplying said city with pure water, and for the laying out and maintaining an aqueduct for conducting said water to said city, and for forming a reservoir to contain and hold said water, and for the preservation and purity of said dam, reservoir, aqueduct and water, the same being necessary therefor.

" And his honor the mayor is hereby authorized and directed to file in the office of the registry of deeds for the county of Worcester a description of said lands, brooks, streams, watercourses, waters, water-rights and rights of flowage, as certain as is required in a common conveyance of lands, and a statement of the purposes for which the same are taken, said description and statement to be signed by the mayor, and to be under the seal of the city."

The petitioner also put in evidence a description of the water or stream taken by the respondent and a statement of the purposes for which it was taken, reciting the above order of the city council, dated December 26, 1871, signed by the mayor and filed in the registry of deeds on December 27, 1871.

The respondent put in evidence an order of the city council of Worcester made on February 8, 1864, and it was contended that this authorized the taking of land, and that the land of the petitioner was taken under it; but a statement of the language of this order is not now necessary.

It appeared that no compensation had ever been paid to the petitioner or to any former owners of its estate for any taking of East or Lynde Brook for supplying the city of Worcester with water. The judge ruled that the petitioner could not recover, and directed a verdict for the respondent; and the petitioner alleged exceptions.

*T. L. Nelson*, for the petitioner.

*W. S. B. Hopkins & F. T. Blackmer,* for the respondent.

LORD, J. The statutes passed by the Legislature, and the proceedings of the city of Worcester under them, for the purpose of supplying that city with pure water, have hardly been direct, plain and unambiguous. An examination, both of the acts of the Legislature and the proceedings of the city, is necessary to determine the rights of the parties in this controversy.

The first legislation to which our attention is called is the St. of 1854, *c.* 338, entitled, " an act for supplying the city of Worcester with pure water." It will be observed, in reference to this act, that it gives to the city of Worcester no right to any property without the consent of the owner. It not only gives no such right, but in two sections of the act such authority is, in words, expressly denied. Section 8 requires that the legal voters of the city shall, within sixty days of its passage, vote upon the question of its acceptance by the city, " and if a majority of the votes so given upon the question shall be in the negative, this act shall be null and void." The act was duly accepted at the legal meeting of the voters within the sixty days.

The next statute in date, upon the subject, is the St. of 1856, *c.* 189, entitled, " an act in addition to an act to supply the city of Worcester with pure water." By this statute, the city of Worcester is authorized to take the waters of one or another of several streams, or from Quinsigamond Pond, at the election of the city council of the city, and was also authorized to " take and hold land around the margin of either of said ponds, or around any reservoirs or water-sources which they may possess or create, in the valleys of said brooks, for the purpose of supplying the said city with pure water."

Section 7 of this act provides that " all damages which may be sustained by reason of the taking by said city of any of the ponds or brooks aforementioned, or of the water thereof, or the water-rights connected therewith, or of diverting any portion of said water from its natural channel into other channels, or of erecting and maintaining any dam or reservoir, or digging up any land, street, road or highway, and entering upon the same for laying, repairing and maintaining pipes, conduits, hydrants and other apparatus necessary thereto, shall be paid by the said city of Worcester to the individual or corporation injured, which

damages shall be assessed in the same manner as is provided in the twenty-fourth chapter of the Revised Statutes with regard to highways."

There are several peculiarities of this statute to which attention is necessarily called. In the first place, no mode is prescribed by which the city of Worcester shall manifest its purpose to take any estate against the right of the owner, nor the extent to which such right is exercised, nor is provision made for any notice to the owner, public or otherwise, of any purpose to take, nor of an actual taking of his property. It is further to be observed that no provision is made, unless it is to be inferred, for any damage for any land taken "around the margin of either of said ponds, or around any reservoirs or water-sources." This statute also was to be void, "unless submitted to, and approved by, the voters of the city of Worcester, at meetings held simultaneously for that purpose, in the several wards, upon notice duly given at least seven days before the time of holding said meetings."

It will be perceived that, unlike the former statute, which it was required should be accepted within sixty days, no limit for the acceptance of this act is fixed, and, in point of fact, it was not accepted until the year 1871, so that no rights would be acquired under it before that time. See *Locke* v. *Selectmen of Lexington*, 122 Mass. 290.

The next statute in the order of time is the St. of 1861, c. 118. The bill of exceptions finds that this statute was "in evidence," but by whom introduced, or for what purpose, the bill of exceptions does not show. Nor is that important. The question which we are to consider is, what is its effect ? We cannot construe this, as contended by the respondent, as an act giving force and effect to the St. of 1856 without its acceptance by the voters of the city. We think its true meaning and effect is, that it is simply an amendment of the St. of 1856, c. 189, to take effect when and if such act should become effectual by acceptance.*

---

* This act, approved March 30, 1861, and entitled " An act in addition to an act for supplying the city of Worcester with water," is as follows :

" Section 1. In addition to the powers heretofore conferred, the city of Worcester is authorized to take and convey into and through said city the waters of East or Lynde Brook in Leicester, or of any other stream or pond

The next statute in time is the St. of 1864, *c.* 104.   This act was approved on March 18, 1864, and took effect upon its passage.   Its provisions are substantially the provisions of the St. of 1856, *c.* 189, as amended by the St. of 1861, *c.* 118.   There are in this act the same omissions which have been referred to as in the St. of 1856, and, if it should be material, we think those omissions might be held to be grave objections to the validity of the act.

It is found by the bill of exceptions that every act which was done by the city of Worcester, which by any possibility could be construed into a condemnation of private property to a public use, was done prior to the passage of the St. of 1864, the orders of the city council having been passed on February 8, 1864, more than a month before the passage of the act. In this condition the rights of the parties continued, until the St. of 1871, *c.* 361.   The city of Worcester had proceeded to introduce a supply of water, but there is nothing to show that the city took or claimed any rights under the St. of 1864, and subsequently to its passage.   In 1870 or 1871, the city desired to enlarge its reservoirs and to take more water than it had been accustomed to take.   It was quite natural, then, that the city, before taking an additional quantity of water, should examine into the extent of the rights which it had acquired, or which it had authority under existing laws to acquire.   Such examination would disclose the fact that the St. of 1856, *c.* 189, had not been accepted by the city, and that the acts which had been done by the city, which were in the nature of taking private property for

in Leicester or Paxton, and to take and hold any land, and build and maintain any structures necessary for said purpose, in the manner, and subject to the liabilities and restrictions set forth in the one hundred and eighty-ninth chapter of the acts of eighteen hundred and fifty-six.

" Section 2.  If at any time the supply of water from the source first fixed upon and selected shall be insufficient for the wants of said city, the said city may, by suitable works, conduct water from either of the other sources referred to in this act, or the act to which this is in addition, into the aqueduct first constructed, or into any reservoir therewith connected.

" Section 3.  Said city is further authorized to take and hold by purchase any lands or rights, and interests therein, which may be necessary for the convenient accomplishment of the purposes of this act.

" Section 4.  This act shall take effect on its passage."

public use, were ordered to be done before the effectual passage of any law giving such right. The city might, therefore, well doubt whether it had acquired any right as against private owners. This court, in *Glover* v. *Boston*, 14 Gray, 282, had used this language: "The appropriation of private property to the public use, which is one of the highest acts of sovereign power, should not be accomplished by the use of ambiguous or uncertain language." This principle has been recently affirmed and approved in *Wilson* v. *Lynn*, 119 Mass. 174.

In this condition of things, the St. of 1871, *c.* 361, was passed. It is quite certain, from the peculiar phraseology of that act, that it was passed in consequence of the doubt which existed, whether the city of Worcester had acquired any legal title to a property upon which it had made very large expenditures. The deficiencies in the previous acts were remedied. Provision was made for making certain the rights of the owners of the property, as well as of the city, by requiring the city to make "a description of the lands, ponds or streams of water so taken, as certain as is required in a common conveyance of lands, and a statement of the purpose for which the same are taken, which description and statement shall be signed by the mayor of said city," &c. The act also provides a remedy for the person whose property is thus taken, which remedy is different from, and undoubtedly a substitute for, that provided in the Sts. of 1856 and of 1864. It is not important to consider whether this act is a mere enlargement of the statute of limitations, because we think it is clear that the whole scope and authority of the act was, to give to the respondent the election to stand upon its rights as they then existed, or to retake any land or other property, (which it contends previously to have taken,) under all the provisions, restrictions, limitations and burdens of this act.

The language of the various sections is quite peculiar in many respects. Section 2 commences, "The said city shall, within sixty days from the time its city council shall vote to take any lands or ponds or streams of water, by authority of this or any former act, file in the office of the registry of deeds for the county of Worcester a description of the lands, ponds or streams of water so taken, as certain as is required in a common conveyance of lands, and a statement of the purpose for which the same are

taken, which description and statement shall be signed by the mayor of said city, and the property so taken shall vest in said city from the time of the filing of said description and state-ment."

Section 3 provides the mode of compensation, and that, if the city and the owner of the land cannot agree upon the amount of damages, the owner or person injured " may apply by petition for the assessment of his damages, at any time within three years from the taking of the said land, water or water-rights, as afore-said, and not afterwards, to the Superior Court in the county of Worcester."

Section 7 is conclusive upon the question whether this act was passed for the mere purpose of· enabling the city to do lawfully what it had theretofore failed to do in accordance with existing laws. That section is as follows: " Nothing in this act shall be construed to authorize said city to take any pond or stream of water, or any water-rights, which said city is not now au-thorized by law to take."

Under the provisions of this act, the city council passed the vote, and prepared a description and statement to be signed by the mayor, and filed in the registry of deeds, as appears in the bill of exceptions. Those acts vested another and different title in the city from what it had before. It had a certain fixed and vested estate in fee; whether in fee simple, or only a base fee, determinable thereafter, we need not inquire. The city has elected to take the rights which that act gives. Having done so, it must take it with the burdens. It does not appear whether any, or what, equities may exist between the petitioner and its grantor; but, as between the landowner and the respondent, it does appear that the respondent has not paid for the property which the petitioner alleges the respondent has taken. We do not decide the case upon any supposed equities; though it is satisfactory to know that the enforcement of the strict rules of law does not operate inequitably.      *Exceptions sustained.*